## STATE *v.* BENJAMIN F. HOPKINS.

Where in an indictment for an inferior offence, as for an offence against the "Nuisance Act," so called, time and place are given as to the keeping and maintaining of "a certain common nuisance, to wit, a grog shop," &c., the indictment is sufficiently certain, although the time and place are not repeated by the words, "then and there," before the subsequent material allegation, "used for the illegal sale and keeping of intoxicating liquors," &c.; the time and place, named in the beginning of the indictment, being construed to apply to all the subsequent averments.

Where the exception is to the charge of the court as to what may fairly and legally be inferred from the proof before them, and the bill of exceptions does not disclose what the proof was, in relation to which the charge was given, the exception will be overruled, if the charge would have been correct in any conceivable state of the proof appropriate to the indictment.

THIS indictment, upon which a verdict of guilty was rendered at the May term of the court of common pleas for the county of Providence, 1857, came to this court, upon exceptions, filed on the part of the defendant, to the charge of the judge presiding at the trial below.

The indictment was found under the "Nuisance Act," so called, passed by the general assembly at its January session, 1857, and contained two counts.

The *first* count alleged, that "Benjamin F. Hopkins, of Providence, in said county, trader, on the 17th day of March, in the year of our Lord one thousand eight hundred and fifty-seven, and on divers other days and times between said last mentioned day and the day of the finding of this indictment, with force and arms, at Providence, in the aforesaid county of Providence, did keep and maintain a certain common nuisance, to wit, a grog shop and tippling shop, and building, place, and tenement, used for the illegal sale and keeping of intoxicating liquors, and for the habitual resort of intemperate, idle, dissolute, noisy, and disorderly persons, against the form of the statute in such case made and provided, and against the peace and dignity of the state."

The *second* count alleged, "that the said Benjamin F. Hopkins, on the 17th day of March, in the year of our Lord one thousand eight hundred and fifty-seven, and on divers other days and times between said last mentioned day and the day of the finding of

5 *

this indictment, with force and arms, at Providence, in the aforesaid county of Providence, did keep and maintain a certain grog shop and tippling shop, and building, place, and tenement, used for the illegal sale and keeping of intoxicating liquors, and for the habitual resort of intemperate, idle, dissolute, noisy, and disorderly persons, to the great damage and common nuisance of all the good citizens of this state, against the form of the statute in such case made and provided, and against the peace and dignity of the state."

Three exceptions were taken, at the trial, to the charge of the presiding judge, and were by him allowed.

I. " That the court instructed the jury, that the indictment was sufficient, and in proper form ; and that it need not allege more specifically, or in any other manner, than was in fact alleged, where the shop, building, place, and tenement therein mentioned was situated, nor when the same was used for the illegal sale and keeping of intoxicating liquors, nor when resorted to by the persons therein mentioned.

II. " That the court instructed the jury, that proof of keeping and maintaining a bar room, used on the days and times mentioned in the indictment for the illegal sale of intoxicating liquors, would sustain the allegation, that he kept a tippling shop ; and,

III. " That the court charged the jury, that the state need not produce any evidence to show that the defendant was not licensed or legally authorized to keep and sell intoxicating liquors in the shop, building, place, and tenement, mentioned in the indictment."

*Blake*, for the prisoner :—

1st. The particular place in which the house was situated is not stated, as it should be, in describing the offence, although venue is properly given to the act of keeping and maintaining such an house. 1 Chit. Crim. Law, 172 ; 5 East, 244 ; 1 Archbold's Crim. Law, 85, 86, 119 ; *Commonwealth* v. *Thurlow*, 24 Pick. 374 ; *Commonwealth* v. *Moore*, 6 Metc. 243 ; *Rex* v. *Matthews*, 5 T. R. 162 ; 2 Chit. Crim. Law, 40 ; 1 Russ. Crim. Law, 301 ; *J'Anson* v. *Stuart*, 1 T. R. 754 ; *Rex* v. *Inhabitants of Hartford*, Cowp. 111 ; *People* v. *Slater*, 5 Hill, 401 ; *People*

v. *Honeyman*, 3 Denio, 121 ; *State* v. *Sturtevant*, 21 Maine, (8 Shepley,) 9 ; *State* v. *Price*, 6 Halstead, 203 ; *State* v. *Gaffrey*, 4 Wisc. 163, 165.

2d. The indictment does not state the time, when the building was used in the illegal mode alleged ; the words "then and there," before " used," being left out. 1 Chit. Crim. Law, 220 ; Wharton's Am. Crim. Law, 9 ; *Rex* v. *Knight*, 1 Ld. Raym. 527 ; *Bridges' case*, Cro. Jac. 630 ; *Sir Nicholas Poyntz's case*, Ib. 214 ; *Johnson's case*, Ib. 610 ; *Rex* v. *Ward*, 2 Ld. Raym. 1461 ; *People* v. *Shaw*, 1 Caines' Rep. 124 ; *State* v. *Thurston*, 35 Maine, 205.

3d. The court charged the jury, that the state need not prove that the defendant was not licensed. *Commonwealth* v. *Thurlow*, 24 Pick. 374.

4th. The court charged the jury, that the keeping of the bar room was proof of the keeping of the shop ; whereas " shop " is the more general term, and " bar room " the more limited one, in its meaning, and the latter does not include the former.

*Charles Hart*, attorney-general, for the state. The indictment, as to place, is certain to a common intent ; since no man can mistake from its allegations that the house was in Providence.

As to time, as stated, it is sufficiently connected with " grog shop and tippling shop," though it may not be with " a place," &c. We may strike out all these last allegations, and leave an indictment certain in time, as to the first allegations. The words, " to wit, " also connect, as to both time and place.

The state need not prove that the defendant was not licensed. It is incumbent upon him to prove that he was. Wharton's Am. Crim. Law, 96.

Besides, the " Nuisance Act " refers to the existing state of the law as to illegal sales of intoxicating liquors ; and the statutes in relation to proceedings for such sales, expressly dispense with such proof. Public Laws, since Digest of 1844, p. 1053. This act was, however, unnecessary, considering the common-law rule with regard to proof of a negative averment.

Proof that the defendant kept a bar room was proof that he kept a " grog shop or tippling shop," in the sense of the statute.

Ames, C. J. The objections to this indictment under the

first exception, to wit, the want of the words " there situate,"
after the words " place and tenement," and the want of the
words " then and there," before " used," in both counts of it,
although they might have prevailed in the English courts at one
period, and in some of the American courts, it seems, would
now prevail, proceed upon an obsolete notion, never based
upon reason, and which has been deliberately discarded by
the highest authority in modern times. The notion is, that
although venue and time are given in the indictment, yet unless
both are repeated before each subsequent material allegation,
" the place," intended by the law, is not the place before stated
by way of venue, and the time, is the time of filing the indict-
ment. It is obvious how far such an artificial rule of construc-
tion might lead us from the natural import of the language
used, and how violative it might be of the well established
general principle with regard to certainty in indictments, that
they need be certain only to a common intent. No one read-
ing this indictment would for a moment doubt, that the pleader
who draughted it intended to convey the notion, that the *place* of
the nuisance was in Providence, where it is alleged that it was
kept and maintained, or, that the *time* when that place was used
in such manner as to make it a nuisance in the eye of the law,
was the time when it is alleged that it was thus kept and main-
tained; and the only question is, whether there be any estab-
lished rule of construction of indictments, which forces us away
from this natural import of the words used, and compels us
to say, that, in truth, there is no averment of place, with regard
to the house, &c., or of the time, when it was used in such
manner as to make it a nuisance. As long ago as when Mr.
Chitty compiled his well known Treatise upon Criminal Plead-
ing, he tells us, that " it seems, however, that the nicety which
requires these words (' then and there ') to be cautiously in-
serted to every material allegation is not so strictly observed in
indictments for inferior offences, as in cases where the life of the
prisoner is in danger; " and he instances cases of trespass,
and of forcible entry and detainer, and cites Lord Hale, Burn's
Justice, and cases running back, through Croke Charles, and
Croke James, to old Dyer. The reason given by him, why the

repetition of time and place may be spared in such cases, is the opposite of the rule contended for, to wit, " because the time and place named in the beginning refer to all the subsequent averments." 1 Chit. Crim. Law, 221, 222, and see *Baude's case,* Cro. Jac. 41 ; Dyer, 69. In *Rex* v. *Napper,* 1 Moody's Crim. Cases, 44, (1824,) which was an indictment for stealing from a dwelling-house, a doubt arose at the assizes where the prisoner was convicted, whether the indictment, not containing the usual words " there situate," after the words " dwelling-house of William Thomas," sufficiently described the house ; and the question was submitted to the consideration of the judges. They held, upon consultation, that the indictment sufficiently showed the place of the house ; and, as the reporter informs us in his marginal note, upon the ground, that " if it is not ex-,pressly stated where the dwelling-house is situated, it shall be taken to be situated at the place named in the indictment by way of venue." In *Commonwealth* v. *Lamb,* 1 Gray, 495, where there was a like omission in an indictment for the wilful and malicious burning of a barn, the supreme court of Massachusetts supported the indictment upon the same ground. See, too, *Stout* v. *Commonwealth,* 11 Serg. & Rawle, 177 ; 1 Russell on Crimes, (7 Am. ed.) 827. In *Regina* v. *Inhabitants of Turweston,* 1 Eng. L. & Eq. 317, which was an indictment against a parish for not repairing a highway, the court rejected the allegation of the immemoriality of the highway, in order to uphold, and did uphold, the indictment ; although, the rejection of the allegation left the indictment uncertain, according to the strict rule here contended for, as to whether there was a highway legally existing during the time it was alleged to be out of repair. In other words, the Queen's Bench held, in 1850, that time was sufficiently alleged as to the material allegation of the existence of a highway at the time it was charged to be out of repair, by, reference to the time when alleged to be out of repair, that being the fair import of the words ; or, in the language of Mr. Justice Coleridge, the indictment not being left, by the rejection, " insensible" in that respect. See, too, *Commonwealth* v. *Kimball,* Monthly Law Reporter for February 7, 1857, p. 582, decided by the supreme court of Massachusetts. We deem it quite too late

in the day to revive the strictness in these particulars required by the extremest line of ancient decisions, always deplored by the greatest English judges, from Lord Hale to Lord Ellenborough, " as grown to be a blemish and inconvenience in the law, and to the administration thereof," (1 Chit. Crim. Law, 170,) when we find that such senseless strictness has been discarded in the courts of its origin, and rejected by so high authority in our own.

2d. The second exception is certainly not maintainable. The bill of exceptions does not recite, or even give us in substance, the testimony upon which it complains that the judge presiding at the trial charged the jury, " that proof of keeping and maintaining a bar room, on the days and times mentioned in the indictment, for the illegal sale of intoxicating liquors, would sustain the allegation that the defendant kept a tippling shop." The bill does not therefore raise the question argued for the exceptant, whether the latter is not a word of larger meaning than the former; since, if the proof was, that the defendant kept a bar room *in a shop*, the argument confesses that the shop would be " a tippling shop," and that the proof of keeping the former would be direct, to support the allegation of the indictment.

Besides, the 3d section of the act under which this indictment was found, (Sched. of January Session, p. 10 ; Rev. Stats. ch. 73, sect. 3,) expressly provides, " that the keeping of the implements or appurtenances usually appertaining to grog shops, tippling shops, or places where intoxicating liquors are sold," all which is implied in the keeping of a bar room, " shall be *primâ facie* evidence that such premises are nuisances within the meaning of the 1st section, &c." In obedience to the statute rule of proof, we do not see how the judge below could avoid charging, as it is complained in the bill of exceptions he did, in this particular.

3d. The same course of remark applies to the third and last exception. The bill does not disclose with anything like fulness, or at all, except as we can infer it, what the proof was, upon which the charge of the court is deemed by the exceptant to be erroneous, in the particular mentioned in this exception. It was

the duty of the exceptant to furnish us with the basis for our review of the charge of the judge below, if he desired that we should review it. In the absence of this, if in application to such a case, the charge could have been correct in any supposable state of the evidence, we are bound in all fairness to presume that it was so.

Certainly there is one mode of sale, which, for aught that the bill discloses, might have been the mode of sale proved upon the trial against the defendant, which all would admit rendered any proof negativing a license or authority to the defendant, to sell, unnecessary to be produced by the state in support of this indictment; we refer to a sale by the glass, the liquor to be drank upon the premises. All such sales are absolutely prohibited. No license, known to our law, authorizes them; and hence, further proof of want of authority than what arises from the mode of sale itself, would, certainly, in any view of the case, be unnecessary. Now, it is precisely this mode of sale which the second exception indicates, that the proof tended to show was practised by the defendant; for that exception, as we have seen, complains of the potency attributed by the presiding judge to proof that the defendant kept and maintained a " bar room " in his shop, &c., a place appropriated, according to its received meaning, to the sale of wine and strong liquors by the glass. What need then of further proof of want of authority than the doing of an act which could not be authorized? By the very terms of the 3d section of the act under which this indictment is brought, as we have had occasion in considering the second exception to see, the mere proof of keeping of a bar room, embracing, as it does, " the implements or appurtenances usually appertaining " to a grog shop or a tippling shop, is made *primâ facie* proof, of itself, that the place complained of is a nuisance. This view of the matter renders it unnecessary for us to consider the more general question discussed under the exception at the hearing, since, upon the narrower ground above stated, this exception also must be overruled.

Exceptions overruled, and case remanded to the court of common pleas for the county of Providence, for further proceedings.